```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
JUANITA COLEMAN,                                  :
                    Plaintiff,                    :
                                                  :             OPINION AND ORDER
v.                                                :
                                                  :             15 CV 2791 (VB)
NONNI'S FOODS, LLC, and HOFFMAN                   :
BUSINESS ENTERPRISES, INC., d/b/a                 :
PINPOINT PERSONNEL,                               :
                    Defendants.                   :
--------------------------------------------------------------x
```

Briccetti, J.:

      Plaintiff Juanita Coleman brings this action against Nonni's Foods, LLC ("Nonni's Foods"), where she formerly worked, and Hoffman Business Enterprises, Inc., d/b/a Pinpoint Personnel ("Pinpoint"), the staffing agency that placed her at Nonni's Foods, alleging she was fired because she is African-American. Plaintiff asserts race discrimination claims under 42 U.S.C. § 1981 ("Section 1981"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), and the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq. ("HRL").

      Nonni's Foods and Pinpoint have each moved to dismiss under Rule 12(b)(6). (Docs. ##26, 29).

      For the following reasons, Nonni's Foods's motion is DENIED, and Pinpoint's motion is GRANTED.

      The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367.

## BACKGROUND

      In deciding the pending motion, the Court accepts as true all well-pleaded factual allegations in the amended complaint and draws all reasonable inferences in plaintiff's favor.

Nonni's Foods produces biscotti and other cookie snacks.  Plaintiff worked at the Nonni's Foods facility in Ferndale, New York, from October 14, 2014, until January 11, 2015.  Plaintiff performed "maintenance, cleaning and other related duties."  (Am. Compl. ¶ 8).  She was hired by Pinpoint, a company that Nonni's Foods had retained "to perform staffing functions, including hiring and Human Resources functions."  (Id. ¶ 10).  Pinpoint assigned employees to Nonni's Foods on an "as needed" or project-specific basis.  (Id. ¶ 9).  Pinpoint screened the people it hired and placed at Nonni's Foods.  That group of people included plaintiff, a co-worker named Brandon Profeta, and two supervisors named Earl and JoAnne.

There are no allegations in the amended complaint that Pinpoint was involved in any way in the daily operations at the Ferndale facility.

On January 2, 2015, plaintiff and Profeta worked the night shift together.  At some point during their shift, Profeta began opening a door, and plaintiff "warned him to be careful because there was another person behind the door and plaintiff was worried about that person's safety."  (Am. Compl. ¶ 13).  Profeta, who is white, allegedly responded, "I'm tired of your bitch ass always telling me what to do, bitch ass nigger."  (Id. ¶ 14).  Plaintiff immediately complained about the remark to Earl, the night shift supervisor, and later complained to JoAnne.  JoAnne explained Nonni's Foods "was short of help," and she made Profeta apologize.  (Id. ¶¶ 17, 19).

Later that week, plaintiff was again working the night shift when Earl allegedly made a comment in front of plaintiff and her co-workers about a website "where someone could get a license to 'hunt and kill niggers' for fifteen dollars."  (Am. Compl. ¶ 21).  Plaintiff also alleges Earl had in the past referred to plaintiff's sister, who previously worked at Nonni's Foods, as "Buckwheat."  (Id. ¶ 33).

There are no allegations in the amended complaint that Pinpoint was ever informed about Profeta's and Earl's remarks.

Plaintiff was fired on January 11, 2015, "a few days" after Earl's alleged remark about the website. (Am. Compl. ¶ 23). Plaintiff alleges "defendants" fired her, purportedly because she "she was 'no longer needed.'" (Id. ¶ 24). She further alleges that, prior to her termination, she had been working seven days a week and had worked overtime on two days.

## DISCUSSION

I. Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Id. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

II.  Federal Claims

Section 1981 provides, in pertinent part: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens."  42 U.S.C. § 1981(a).  "[T]he term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts."  Id. § 1981(b). The statute "thus covers claims of discriminatory termination," such as plaintiff's claim in this case.  Lauture v. Int'l Bus. Mach. Corp., 216 F.3d 258, 261 (2d Cir. 2000).[1]

Title VII likewise makes it unlawful "to discharge any individual . . . because of such individual's race."  42 U.S.C. § 2000e-2(a)(1).

Race discrimination claims under Section 1981 and Title VII are analyzed under the same framework.  See Littlejohn v. City of New York, 795 F.3d 297, 312 (2d Cir. 2015).  To survive a motion to dismiss, a plaintiff alleging race discrimination "must plausibly allege that (1) the employer took adverse action against him and (2) his race . . . was a motivating factor in the employment decision."  Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 86 (2d Cir. 2015).  The Second Circuit has emphasized that, "at the initial stage of a litigation, the plaintiff's burden is 'minimal.'"  Id. (quoting Littlejohn v. City of New York, 795 F.3d at 311).  Thus, "a plaintiff is not required to plead a prima facie case under McDonnell Douglas [Corp. v. Green, 411 U.S. 792 (1973)] . . . to defeat a motion to dismiss," Vega v. Hempstead Union Free Sch. Dist., 801 F.3d. at 84 (emphasis added); a plaintiff "need only plausibly allege facts that provide

---

[1]  The failure of Nonni's Foods to cite Section 1981(b) and Lauture in arguing that Section 1981 does not cover discriminatory termination (Nonni's Foods's Br. at 4-6) is troubling, to say the least.

at least minimal support for the proposition that the employer was motivated by discriminatory intent." Id. at 86-87 (internal quotation marks omitted).[2]

With this rubric in mind, the Court first considers plaintiff's claims against Nonni's Foods.

    A.    <u>Claims Against Nonni's Foods</u>

Nonni's Foods concedes plaintiff has plausibly alleged it took an adverse employment action against her. (Nonni's Foods's Br. at 7 n.5). Thus, the question is whether plaintiff has pleaded enough facts to "provide at least minimal support for the proposition that [Nonni's Foods] was motivated by discriminatory intent." <u>Vega v. Hempstead Union Free Sch. Dist.</u>, 801 F.3d at 87.

She has.

Plaintiff alleges Profeta and Earl made racist remarks. Specifically, plaintiff alleges Profeta called her a "bitch ass nigger" (Am. Compl. ¶ 14), while Earl mentioned a website "where someone could get a license to 'hunt and kill niggers' for fifteen dollars" (id. ¶ 21), and referred to plaintiff's sister as "Buckwheat." (Id. ¶ 33).[3] Although there are no allegations in the amended complaint suggesting Profeta or Earl had a role in the decision to fire plaintiff, "stray remarks in the workplace by persons who are not involved in the pertinent decision making process may suffice to present a prima facie case, provided those remarks evidence invidious discrimination." <u>Schreiber v. Worldco, LLC</u>, 324 F. Supp. 2d 512, 519 (S.D.N.Y. 2004) (alteration and internal quotation marks omitted). Profeta's and Earl's remarks certainly

---

[2]    Nonni's Foods's failure to cite either <u>Littlejohn</u> or <u>Vega</u> is likewise troubling.

[3]    Nonni's Foods claims the amended complaint does not identify a supervisor "who made any racially discriminatory remark." (Nonni's Foods's Br. at 12). But the amended complaint repeatedly identifies Earl as plaintiff's supervisor. (Am. Compl. ¶¶ 15, 21-22, 33-34, 39-41). Nonni's Foods's misstatement of the amended complaint's allegations is troubling.

evidence invidious discrimination, as "the word 'nigger'[]bears clear racial connotations and is indeed . . . one of the most historically derogatory words in the history of this nation." Poles v. Brooklyn Cmty. Hous. & Servs., 2012 WL 668910, at *3 (E.D.N.Y. Feb. 29, 2012) (internal quotation marks omitted). And the fact that both remarks were made within days of plaintiff's firing[4] makes them more probative of discriminatory intent. See Johnson v. Strive East Harlem Empl. Grp., 990 F. Supp. 2d 435, 449 (S.D.N.Y. 2014) ("[Discriminatory] remarks are more probative of intent when made close in time to the adverse action.").[5]

Moreover, a discriminatory remark "may bear a more ominous significance when considered within the totality of all the evidence." Carlton v. Mystic Transp., Inc., 202 F.3d 129, 136 (2d Cir. 2000) (internal quotation marks omitted). Here, in addition to her allegations about Profeta's and Earl's racist comments, plaintiff has alleged facts suggesting the proffered reason for her termination was false. Plaintiff alleges the purported reason for her firing was that "she was 'no longer needed.'" (Am. Compl. ¶ 24). But in the weeks prior to her termination, plaintiff had been working seven days a week, had worked overtime on two occasions, and had been told Nonni's Foods was "short of help." (Id. ¶¶ 17, 27). An employer's "pretextual reason for its action may indeed give support to the inference of prohibited discrimination." McCarthy v. N.Y.C. Tech. Coll. of City Univ. of New York, 202 F.3d 161, 166 (2000).

---

[4] Nonni's Foods contends that Profeta's alleged racist remark was made "weeks prior" to plaintiff's termination. (Nonni's Foods's Br. at 11). This contention is also troubling. According to the amended complaint, Profeta's remark was made on January 2, 2015, and plaintiff was terminated nine days later, on January 11, 2015. (Am. Compl. ¶¶ 8, 12).

[5] One of Nonni's Foods's principal arguments is that the amended complaint fails to allege a causal connection between Profeta's and Earl's discriminatory remarks and the decision to fire her. (Nonni's Foods's Br. at 1, 4, 10-13). To be sure, to prevail on her claims plaintiff must present evidence that the people who harbored discriminatory animus against her "played a meaningful role" in her termination. Holcomb v. Iona Coll., 521 F.3d 130, 143 (2d Cir. 2008) (internal quotation marks omitted). But the question of what role, if any, Profeta and Earl had in plaintiff's firing must be resolved after discovery, not on a motion to dismiss.

At this stage of the case, plaintiff need only allege facts sufficient to give rise to a "<u>minimal</u> inference of discriminatory motivation." <u>Vega v. Hempstead Union Free Sch. Dist.</u>, 801 F.3d. at 84 (quoting <u>Littlejohn v. City of New York</u>, 795 F.3d at 306, 311) (emphasis added). The allegations in the amended complaint, as a whole, give rise to such a minimal inference. Accordingly, Nonni's Foods's motion to dismiss plaintiff's Section 1981 and Title VII claims is denied.

      B.     <u>Claims Against Pinpoint</u>

Unlike Nonni's Foods, which concedes plaintiff has plausibly alleged it took an adverse employment action against her, Pinpoint maintains plaintiff "has failed to allege sufficient facts showing that <u>Pinpoint</u> subjected her to any adverse employment action." (Pinpoint Br. at 7) (emphasis added). But even assuming Pinpoint played some part in plaintiff's firing, she has not alleged enough facts to provide even "minimal support for the proposition that [Pinpoint] was motivated by discriminatory intent." <u>Vega v. Hempstead Union Free Sch. Dist.</u>, 801 F.3d at 86-87 (internal quotation marks omitted).

The amended complaint includes no facts from which the Court could draw the plausible inference that Pinpoint knew or should have known about the alleged racist remarks made by Profeta and Earl, which are plaintiff's principal allegations of discrimination. Indeed, there are no allegations Pinpoint was involved in the day-to-day operations at the Ferndale facility; nor are there any allegations Pinpoint was ever informed of Profeta's and Earl's remarks. Pinpoint could not plausibly have been motivated by racial animus in firing plaintiff if it was unaware any discriminatory conduct had taken place. See <u>Lima v. Addeco</u>, 634 F. Supp. 2d 394, 401-02 (S.D.N.Y. 2009) (staffing agency not liable under Title VII when plaintiff's "primary evidence in support of his claim are alleged derogatory comments," and there was "no indication that he

7

informed [the agency] about [the] discriminatory comments"), aff'd, 375 F. App'x 54 (2d Cir. 2010) (summary order) (agency "could not be held liable to plaintiff . . . because there is no evidence that [it] either knew or should have known about any of the alleged discrimination").

Plaintiff argues the amended complaint's allegations "give rise to the inference that Pinpoint was aware of the discriminatory incidents" because the amended complaint alleges Pinpoint placed employees at Nonni's Foods, performed staffing functions, and was responsible for screening the employees it hired and assigned to Nonni's Foods, including Profeta and Earl. (Pl.'s Br. at 10). But these allegations are plainly not enough to support even a minimal inference that Pinpoint was aware of Profeta's and Earl's remarks. See Lima v. Addeco, 634 F. Supp. 2d at 396-97, 400 (S.D.N.Y. 2009) (the fact that staffing agency provided "payroll and related administrative services" to plaintiff's workplace was not evidence the agency "knew or should have known about unlawful discriminatory conduct"); accord Sosa v. Medstaff, Inc., 2013 WL 6569913, at *3-4 (S.D.N.Y. Dec. 13, 2013) (dismissing claims against staffing agency that paid plaintiff's monthly salary because plaintiff "has not pled any facts indicating that the [agency] should be held liable for the allegedly discriminatory and hostile conduct").

Accordingly, plaintiff's Section 1981 and Title VII claims against Pinpoint must be dismissed.

III.  HRL Claim

Discrimination claims under the HRL are evaluated under the same standards applicable to claims under Section 1981 and Title VII. See Vivenzio v. City of Syracuse, 611 F.3d 98, 106 (2d Cir. 2010); Barbosa v. Continuum Health Partners, Inc., 716 F. Supp. 2d 210, 216 (S.D.N.Y. 2010).

Accordingly, because plaintiff has stated plausible claims under Section 1981 and Title VII against Nonni's Foods, Nonni's Foods's motion to dismiss plaintiff's HRL claim is denied. But because plaintiff has failed to state a federal claim against Pinpoint, plaintiff's HRL claim against Pinpoint is dismissed.

## CONCLUSION

Nonni's Foods's motion to dismiss is DENIED.

Pinpoint's motion to dismiss is GRANTED.

The Clerk is instructed to terminate the motions.  (Docs. ##26, 29).

The Clerk is further instructed to terminate Hoffman Business Enterprises, Inc., d/b/a Pinpoint Personnel, as a defendant.

Dated: December 14, 2015
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge